IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

NOV 1 6 2005

CHRIS R. JOHNSON, CLERK

BY _____
DEPUTY CLERK

STEPHANY HERNANDEZ, for herself
and all others similarly situated

    Plaintiffs,

vs.

NATIONAL ACCOUNT SYSTEMS,
INC., THE EVANS LAW FIRM, P.A.,
MARSHALL DALE EVANS,
HEALTHSOUTH CORPORATION,
NORTHWEST ARKANSAS
PATHOLOGY ASSOCIATES, INC., &
JOHN DOE DEFENDANTS 1-25

    Defendants.

Case No. 05-5185

NON-JURY TRIAL REQUESTED

---

## COMPLAINT -- CLASS ACTION

---

COMES NOW the Plaintiff, Stephany Hernandez ("Hernandez"), by and

through her undersigned counsel, and for her *Complaint* against Defendants hereby

states:

## JURISDICTION AND VENUE

1.     This is a complaint arising under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (the "FDCPA") and state law claims of civil conspiracy, fraud and deceit, malicious prosecution, and abuse of process.  The Plaintiff seeks actual damages, punitive damages, statutory damages, litigation expenses, and attorneys' fees against the defendants, jointly and severally.

2.     Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), in that Plaintiff's claims arise under the laws of the United States, including 15 U.S.C. §§ 1692 *et. seq.*, which establishes a civil action as a remedy to defendants' failure to comply with provisions of the FDCPA and allows the recovery of statutory damages, court costs, and attorneys' fees.   Additionally, supplemental jurisdiction over all of Plaintiffs' non-federal question claims is proper in this Court pursuant to 28 U.S.C. § 1367, in that they form part of the same case or controversy.

3.     This Court has personal jurisdiction over the defendants because all Defendants have a principal place of business within this judicial district and are incorporated in the State of Arkansas.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to these claims occurred in this district.

## PARTIES

5.      Plaintiff Hernandez is an individual and a resident of Washington County, Arkansas residing at 1866 Sara Lane, Springdale, Arkansas 72764, who has been injured, harassed, and she has suffered as a direct result of Defendants' repeated illegal and unfair debt collection practices and actions.

6.      Separate Defendant National Account Systems, Inc. ("NAS") is a debt collector within the meaning of § 1692a(6) of the FDCPA and is a for- profit corporation authorized to do business within the State of Arkansas, having its last known listed principal place of business at 1905 E. Mission Blvd., Suite 5, Fayetteville, Arkansas 72702.  Darwin J. Baker, the registered agent for Separate Defendant NAS is located at 2566 Sweetbriar, P.O. Box 644, Fayetteville, Arkansas 72702.   This separate defendant has hired various individuals who, acting either within the intended scope of employment or not, have violated the FDCPA by harassing Hernandez repeatedly. Employees not acting within the scope of employment as defined by NAS will be later identified and incorporated into this lawsuit as John Does, more fully described below.

7.      On information and belief, Separate Defendant Evans Law Firm, P.A. is a for-profit corporation having its principal place of business located at 2333 North Green Acres Road, Fayetteville, Arkansas 72702, which lists Marshall Dale Evans, of the same address, as its registered agent.  Evans Law Firm, P.A. is a debt collector within the meaning of § 1692a(6) of the FDCPA, and serves as legal representation for Separate

Defendant NAS in connection with debt collection proceedings. This separate defendant has hired various individuals who, acting either within the intended scope of employment or not, have violated the FDCPA by harassing Hernandez through improper legal process and other illegal means. Employees not acting within the scope of employment as defined by Evans Law Firm, P.A. will be later identified and incorporated into this lawsuit as John Does, more fully described below.

8.     On information and belief, Separate Defendant Marshall Dale Evans is an attorney licensed in the State of Arkansas who practices law from a location of 2333 North Green Acres Road, Fayetteville, Arkansas 72702. Evans is an attorney who qualifies as a debt collector within the meaning of § 1692a(6) in that a substantial portion of his law practices is devoted to the collection of accounts for others. His actions, as an officer of the Court by virtue of his licensure, indicate that his corporate entity does not shield him from his own personal obligations to conform his conduct to federal law, including the FDCPA. For purposes of this lawsuit, both separate defendants Evans Law Firm, P.A., as corporate entity operated by separate defendant Marshall Dale Evans, individually, will be referred to collectively as "Defendants Evans."

9.     On information and belief, Separate Defendant HEALTHSOUTH Corporation ("HEALTHSOUTH") is a foreign for-profit corporation authorized to do business within the State of Arkansas. The registered agent for Separate Defendant

HEALTHSOUTH is "The Corporation Company," 425 West Capitol Avenue, Suite 1700, Little Rock, Arkansas 72201. On information and belief, Separate Defendant HEALTHSOUTH conspires with, and delegates limited authority to, Separate Defendant NAS to perform debt collection services on HEALTHSOUTH's behalf. While such authority is reserved and limited, it is enough to trigger agency liability as such agency liability is construed under the laws of the State of Arkansas. Furthermore, HEALTHSOUTH, on its own accord and independent from the conspiracy and inducement claims mentioned above, violated the FDCPA on grounds separately stated below.

10.     On information and belief, Separate Defendant Northwest Arkansas Pathology Associates, P.A., ("NWAPA"), is a for-profit corporation authorized to do business within the State of Arkansas, having Dr. Anthony Hui listed as its registered agent at 1559 Eton St., Fayetteville, Arkansas 72703. On information and belief, NWAPA employs Separate Defendant NAS to perform debt collection services on NWAPA's behalf.

11.     Separate Defendants John Doe 1-25 are persons who have conspired with Separate Defendant NAS, Defendants Evans, and other separate defendants not yet listed or identified. These John Doe defendants sought to perform, or actually performed debt collection services in violation of the FDCPA. While the identities of

these parties are not presently known, Plaintiff will amend her pleadings to properly establish all real parties in interest to the litigation, if any.

## FACTS

12.     Defendant NAS is a debt collector.   Defendants Evans are also debt collectors.   Defendants Evans are engaged as attorneys for and by Defendant NAS, exclusively.   Together, NAS and Defendants Evans work in active concert and through private agreement as debt collectors in attempts to collect consumer debts, including medical debts, through various illegal and unauthorized methods and/or unlawful means.

13.     Defendant NAS first contacted Plaintiff Hernandez using the letter dated February 4, 2004, which is provided as Exhibit 1.  The letter indicates that collection is being sought in the amount of $235.00 for services rendered by "NW Ark Pathology Assoc."  The letter states that NAS is a "private collection agency."

14.     Defendant NAS later contacted Plaintiff Hernandez by letter dated October 21, 2004, which is provided as Exhibit 2.  The letter falsely indicates that the account connected with "NW Ark Pathology Assoc" is no longer a part of collections, but "has been assigned" to NAS.  Furthermore, the claim for debt increased to $255.00, without explanation.  Furthermore, the unsigned letter is purportedly authored by "Kim Bradley" who states that she will "review your account with our client for further proceedings and assume you are unwilling to voluntarily repay your debt."  The letter,

on its very face, establishes that NAS is acting on behalf of "the client" but it also provides that the account had "been assigned" to NAS. This blatant incongruity demonstrates, *inter alia*, that NAS made false representations relative to the collection of a debt in an attempt to secure monies from Plaintiff Hernandez. In this second letter, Exhibit 2, NAS again confirms it is a private collection agency.

15.    On information and belief, Plaintiff Hernandez received no additional written communications from NAS concerning other debts other than the NWAPA matter involving $235 (increased later to $255). However, Plaintiff Hernandez and her spouse did receive harassing telephone calls from NAS over this period of time. These calls were of an egregious nature and were harassing, repetitive, and were made at entirely inappropriate times. For example, on information and belief, representatives of NAS called on Saturdays, Sundays, evenings, mornings, and more than one occasion in a given week. These representatives also called Plaintiff Hernandez' spouse while he was working, with full knowledge that such spouse was not to receive telephone calls at work. These harassing phone calls, including those at a place of work with knowledge the employer does not permit telephone calls, constitutes several different FDCPA violations. Furthermore, Plaintiff Hernandez was in an immediate crisis, having been involved in a large motor vehicle accident, having her minor child severely injured in the same motor vehicle accident, and she also was in the process of recuperating from a miscarriage of her pregnancy. Notwithstanding these situations, NAS maintained its

steadfast desire to harass and intimidate the Hernandez family over this amount of money.

16.    On or about April 26, 2005, Defendant NAS filed a lawsuit against Plaintiff Hernandez using NAS as the sole plaintiff to that action.  NAS appears to be the only entity to have legally engaged Defendants Evans for purposes of initiating the lawsuit, which is attached as Exhibit 3.  The lawsuit was filed in the District Court of Springdale, Arkansas, under jurisdiction of the Honorable Stanley W. Ludwig.  Within the lawsuit, Exhibit 3, Defendant NAS and Defendants Evans make claim to not simply the NWAPA debt of the increased amount of $255; rather, the lawsuit includes claims arising from an "underlying obligation to HEALTHSOUTH" as well.  See ¶ 2, *NAS Complaint*, Exhibit 3.  The lawsuit also makes claims for recovery of attorneys' fees.

17.    The NAS Complaint also makes the duly signed representation to a court of the State of Arkansas that the "defendant [Hernandez] is indebted to the plaintiff [sic] in the sum of EXACTLY SIX HUNDRED FIFTY-FIVE DOLLARS."  See ¶ 2, *NAS Complaint*, Exhibit 3.

18.    At ¶5 of the *NAS Complaint*, Defendant NAS and Defendants Evans insert a specific statement, known generally as a "Validation Notice" as required by the FDCPA that permits thirty (30) days in which Hernandez could dispute the validity of the debt without suffering adverse consequences.  See Exhibit 3.

19.     Accompanying the *NAS Complaint* was a *Summons* prepared by Defendants Evans, and such summons mirrored the essential time limitation language required of the Validation Notice by providing express statements that no default would be entered against her within the thirty (30) day window (as mirroring the FDCPA requirement). See Exhibit 3a, which is attached.

20.     Also accompanying the *NAS Complaint* was a document entitled *"Assignment and Verified Affidavit of Account,"* as executed by Sonya Cagle, Business Office Manager for NWAPA, which is provided as Exhibit 3b. In such affidavit, Ms. Cagle states the following: "That for value received, I hereby again and specifically assign and transfer all of my right, title and interest in and to my account against Stephany Hernandez." Furthermore, the document stated that there was a "blanket assignment" to NAS, of which there was none. Such information regarding a transfer of the account in entirety was manifestly false because NWAPA retained right and title to the account. At trial at the district court level, the "legal representative" of NWAPA who appeared to testify in support of the debt professed no knowledge of the existence of, nor understanding of any "blanket assignment." Furthermore, also at trial the representative of NWAPA confirmed that NWAPA claims right, title, and interest in the underlying debt.

21.     Also accompanying the *NAS Complaint* was a document entitled *"Assignment and Verified Affidavit of Account,"* as executed by Missy Lowell, Business

Office Manager for HEALTHSOUTH, which is provided as Exhibit 3c. In such affidavit, Ms. Lowell states the following: "That for value received, I hereby again and specifically assign and transfer all of my right, title and interest in and to my account against Stephanie [sic] Hernandez." Furthermore, the document stated that there was a "blanket assignment" to NAS, of which there was none. Such information regarding a transfer of the account in entirety was manifestly false because HEALTHSOUTH retained right and title to the account. At trial at the district court level, the "legal representative" of HEALTHSOUTH who appeared to testify in support of the debt confirmed that HEALTHSOUTH still claims right, title, and interest in the underlying debt.

22.     Plaintiff Hernandez received the lawsuit on or about May 4, 2005. On May 31, 2004, which is within the thirty (30) day window in which to file an *Answer* as provided on the *Summons*, Plaintiff Hernandez filed a written *Answer* in which she specifically raised the issue of invalidity of the underlying assignments of the accounts to NAS, and she also denied the underlying debt amounts as being true and accurate reflections of the monies that Defendant NAS sought recovery.

23.     Remarkably, on June 24, 2005, the Honorable Stanley Ludwig wrote a letter to Plaintiff Hernandez' counsel stating that NAS and Defendants Evans presented a proposed *Default Judgment* for failure to respond within twenty (20) days. See Exhibit 4. Judge Ludwig provided opportunity for Plaintiff Hernandez to provide

proof why judgment should not enter against her. This action, as taken by Defendant NAS and Defendants Evans, was contrary to both the FDCPA requirement that thirty (30) days lapse prior to taking affirmative action on the debt, and was also contrary to the express language of the Summons as prepared by Defendants Evans.

24.     In response to Honorable Ludwig's invitation to show cause why judgment should not be entered against Hernandez, Plaintiff Hernandez' counsel provided timeline evidence and argument that set forth the clear error by Defendant NAS and Defendants Evans in attempting to take default judgment against Hernandez prior to the expiration of the thirty (30) day time period explicitly provided in both the *Summons* and the federal law FDCPA requirements.  See Exhibit 5, which is attached.

25.     Honorable Ludwig agreed with Plaintiff Hernandez' interpretation of the Summons and deemed the *Answer* proper.  See Exhibit 6.     The parties thereafter appeared for trial, and as discussed previously, the witnesses and representatives of both NWAPA and HEALTHSOUTH stated they did not, in fact, assign all rights and title to the respective accounts to NAS.  Upon hearing that testimony, the district court dismissed the claims advanced solely by NAS, and held that "Plaintiff does not hold valid assignments to the accounts that are subject of this lawsuit."  See Exhibit 7.

26.     An example of the conspiring and illegal conduct as between Defendant NAS and separate defendant HEALTHSOUTH, on February 19, 2005, Defendant HEALTHSOUTH and NAS entered into a sham "blanket assignment" of all right, title,

and interest in an account with an alleged principal sum of $420.00 in efforts to collect on the balance of that account as purportedly owed by Plaintiff Hernandez. Such "blanket assignment" was not in fact or in law a valid assignment, rather, the "blanket assignment" was merely a sham transaction designed to permit Defendant NAS to initiate legal action without exposing HEALTHSOUTH to potential counterclaim liability.

27. An example of the conspiring and illegal conduct as between Defendant NAS and separate defendant NWAPA, Defendant NWAPA and NAS entered into a sham "blanket assignment" of all right, title, and interest in an account with an alleged principal sum of $255.00 in efforts to collect on the balance of that account as purportedly owed by Plaintiff Hernandez. Such "blanket assignment" was not in fact or in law a valid assignment, rather, the "blanket assignment" was merely a sham transaction designed to permit Defendant NAS to initiate legal action without exposing NWAPA to potential counterclaim liability.

28. Either "blanket assignment" is void because there is no adequate consideration to support such a complete and "blanket" transfer of legal rights for purposes of initiating lawsuits as a real party in interest to the claim. For example, the debt is still considered "owned" by HEALTHSOUTH and NWAPA and there is no exchange of money for this "blanket assignment" transaction. Furthermore, in the event payments were made by Plaintiff Hernandez to NAS following when the "blanket

assignment" was made, representatives of NAS would nonetheless return monies to HEALTHSOUTH or NWAPA.   The relationship between NAS and HEALTHSOUTH and between NAS and NWAPA was falsely and misleadingly referred to as a "blanket assignment," when in true fact NAS was operating merely as a debt collector whose only legal interest was in the form of services rendered and speculative opportunity rather than a true legal purchase of the account in question.

29.     The "blanket assignment" is void as a matter of law, and representatives of NAS and HEALTHSOUTH and the representatives of NAS and NWAPA knowingly continued forward with this scheme which, as designed, illegally pursued legal action using NAS as the real party in interest when HEALTHSOUTH and/or NWAPA were the true real party in interest to any legal action.  NAS fraudulently initiated legal process without legal authority.

30.     In violation of the FDCPA, the collection lawsuit complaint falsely represented that NAS was the rightful owner of the alleged debt and demanded payment, attorneys' fees, and costs associated with the HEALTHSOUTH debt.

31.     Also in the collection lawsuit complaint, NAS and Defendants Evans alleged entitlement to fees associated with a returned check fee, but neither NAS nor Defendants Evans gave adequate notice to Plaintiff Hernandez that she would be charged any fees over and above the original debt amount.

## COUNT ONE-VIOLATION OF THE
## FAIR DEBT COLLECTION PRACTICES ACT

32.     The above paragraphs are herein realleged, reiterated, reaverred, and pled herein as if set forth in full.

33.     Separate Defendant NAS violated the FDCPA by virtue of making repeated outrageous, intimidating, and harassing telephone calls to both Plaintiff Hernandez and her spouse, including calls to his work with knowledge that personal calls were not tolerated by his employer.

34.     Separate Defendant NAS and Defendants Evans are subject to the FDCPA because they are debt collectors having a wide array of collection responsibilities throughout Northwest Arkansas.  NAS and Defendants Evans intentionally adopted, constructed, and incorporated patently invalid "blanket assignments" for purposes of making false or misleading representations in furtherance of debt collection.  These Defendants implemented unfair practices in their attempts to collect consumer debts from Mrs. Hernandez as well as other similarly situated class members, all in violation of the FDCPA. See specifically 15 U.S.C. §§ 1692(e) and 1692(f).

35.     On information and belief, Separate Defendants NAS and Evans wrongfully represented the character, amount, and legal status of the debt owed by Mrs. Hernandez and similarly situated class members by falsely representing that additional expenses relating to court costs and attorneys fees would be assessed to the

- 14 -

plaintiffs in connection with the Defendants' illegal lawsuit, when in true fact Defendant NAS held no legal authority to even initiate the lawsuit(s).

36.     On information and belief, Separate Defendants NAS and Defendants Evans wrongfully represented the character, amount, and legal status of the debt owed by Mrs. Hernandez and similarly situated class members by unlawfully representing court assessed fees as an original principal debt amount capable of being collected.

37.     On information and belief, Separate Defendants NAS and Defendants Evans wrongfully represented the character, amount, and legal status of the debt owed by Mrs. Hernandez and similarly situated class members by misstating the debt amount owed to defendants in the complaint as compared to the amount indicated through the invalid assignment agreements.

38.     The use of false representations or deceptive means to attempt to collect any debt is a violation of the FDCPA. See 15 U.S.C. §1692(f). Defendants NAS and Defendants Evans falsely portrayed authority and legal right to the consumer debts when those purported debts were actually owed to HEALTHSOUTH, NWAPA, and other JOHN DOE defendants.

39.     The FDCPA expressly prohibits any threats to take action that cannot legally be taken. See 15 U.S.C. §1692(f). Defendants to this lawsuit not only threatened an unlawful action in attempts to collect a debt, but also actually initiated an unlawful

lawsuit without proper legal authority in direct violation of the FDCPA.  Any collection

amounts resulting from these actions constitute actual damages.

40.     The FDCPA prohibits debt collectors from harassing, oppressing, or

abusing any person through repeated or continuous phone calls.  See 15 U.S.C.

§1692(d).  Defendant NAS continuously called Defendant Hernandez after she had

informed them to cease, and also made calls during the evening hours, and on

weekends after she had advised them it was inconvenient.  On information and belief

Defendant NAS used these phone calls to annoy, abuse and harass Mrs. Hernandez and

other similarly situated individuals in attempts to collect a debt in direct violation of the

FDCPA.

41.     Upon information and belief, Defendant NAS and Defendants Evans, in

rank violation of the FDCPA, failed to provide Mrs. Hernandez and similarly situated

class members the mandated thirty (30) day period to dispute any alleged debt by

affirmatively seeking default judgment prior to the expiration of the thirty (30) day

validation notice period after receiving notification of collection. See 15 U.S.C. §1692(g).

42.     Upon information and belief, Separate Defendant NAS and Defendants

Evans falsely represented to Plaintiff and similarly situated class members that the

debts owing to HEALTHSOUTH, NWAPA, and other JOHN DOE defendants had

legally been assigned to them as innocent purchasers for value when in fact no such

legal assignment existed, all in direct violation of the FDCPA.

- 16 -

43.     On information and belief, Separate Defendants HEALTHSOUTH,

NWAPA, and other JOHN DOE defendants gave sham authority for Separate

Defendant NAS and Defendant Evans to initiate unlawful legal proceedings and

otherwise collect consumer debts in an unlawful and unfair manner, all the while

shielding HEALTHSOUTH, NWAPA, and other JOHN DOE defendants from

additional counterclaim liability by virtue of HEALTHSOUTH and JOHN DOE

defendants not being parties to the lawsuit.

44.     Upon information and belief, Defendants have unlawfully threatened to

collect, and have unlawfully collected debt amounts (including interest, fees, charges,

penalties, and other expenses incidental to principal obligations) through patently

invalid "blanket assignments" and other written or verbal agreements between

themselves and other agencies holding consumer debt accounts, all in direct violation of

the FDCPA.

45.     Hernandez and similarly situated class members are entitled to actual

damages; statutory damages amounting to $500,000, or one percent (1%) of each

Defendants' net worth; and attorneys' fees, and costs pursuant to 15 U.S.C. §1692k(a).

## VI.  COUNT TWO-CIVIL CONSPIRACY

46.     The above paragraphs are herein realleged, reiterated, reaverred, and pled herein as if set forth in full.

47.     On information and belief, Separate Defendant HEALTHSOUTH and NWAPA is or should be aware of the illegal collection tactics employed by NAS and Defendants Evans and has an affirmative duty to properly manage or supervise any collection agencies working on their behalf.  HEALTHSOUTH and NWAPA hold a duty to understand and investigate whether the debt collection company undertaking the collection efforts of any debts purportedly owing HEALTHSOUTH or NWAPA meet standards imposed by applicable federal law, namely to monitor and be aware of the illegal collection tactics employed by NAS and Evans.

48.     At least two of the above-named defendants have engaged in a continuing and ongoing civil conspiracy as between NAS and HEALTHSOUTH, or as between NAS, Defendants Evans, and HEALTHSOUTH.  The above-named defendants have acted in a combined manner to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself, unlawful, oppressive, or immoral by unlawful oppressive, or immoral means to the injury of Hernandez and other similarly-situated class members.

49.     On information and belief, Separate Defendants HEALTHSOUTH, NWAPA , and JOHN DOE defendants have acted in concert with NAS and Defendants

Evans to collect on sums in a manner and mode that is illegal, and said illegal collection acts and efforts worked to harass, oppress, and damage Hernandez and similarly situated class members.

50.     On information and belief, Separate Defendant Evans acted in concert with NAS to collect on sums in a manner and mode that is illegal and said illegal collections acts and efforts worked to harass, oppress, and damage Hernandez and similarly situated members.

51.     On information and belief, Separate Defendants Evans and NAS have acted in concert and by agreement to collect on sums in which the acts and efforts of collection used against Hernandez are illegal; namely, NAS and Evans used tactics to collect on the debts in a manner that worked to harass, oppress, and damage Hernandez and similarly situated class members.

52.     Hernandez and similarly situated class members are entitled to actual and punitive damages and should be awarded attorneys' fees and costs.

## VII.  COUNT THREE-FRAUD AND DECEIT

53.     The above paragraphs are herein realleged, reiterated, reaverred, and pled herein as if set forth in full.

54.     Upon information and belief, the Defendants made false representations to the Plaintiff and similarly situated class members when the Defendants represented that the alleged debt was that of NAS and Defendants Evans, when in fact the alleged

debt was still owned and owed to HEALTHSOUTH, NWAPA, or other JOHN DOE defendants.

55.    Upon information and belief, the Defendants knew, or should have known, that their representations to owing debtors was patently false as the "blanket assignment" agreement failed to provide any legal consideration for actual legal transfer of any rights, title or interest.  Furthermore, Defendants received advance notification from Plaintiff's counsel advising of the invalid assignment agreements prior to the collection lawsuit trial, and the collective Defendants pursued collection activity anyway and without legal justification for doing so.

56.    Upon information and belief, the Defendants intended to induce Plaintiff and similarly situated class members into paying an alleged debt to the wrongful owner in a manner inconsistent with the law.  The Defendants encouraged the Plaintiff and other similarly situated debtors to rely upon the false representations contained within collection letters or legal complaints in efforts to coerce payment from unsuspecting debtors.

57.    Upon information and belief, the Plaintiff and similarly situated class members were justified in relying upon the representations of the Defendants in that laws such as the FDCPA are in place to protect their rights and interests, and as debt collectors the Defendants are required to abide by those laws.

58.     The Plaintiff and similarly situated class members have suffered damages as a result of the false representations of the Defendants, and such damages include but are not limited to the legal expenses associated with representation in lawsuits unlawfully prosecuted by Defendants, payments issued or potentially issued in satisfaction of illegal collection amounts, and any assessments paid related to the demanded fees, penalties, charges, and expenses related to such unlawful lawsuits.

## VIII.  **COUNT FOUR-MALICIOUS PROSECUTION**

59.     The above paragraphs are herein realleged, reiterated, reaverred, and pled herein as if set forth in full.

60.     Upon information and belief, Separate Defendants NAS and Evans initiated the collection lawsuit and other similar lawsuits with malice and without probable cause in an effort to intimidate Mrs. Hernandez and similarly situated class members into paying a debt not lawfully owned by NAS or Evans.

61.     The debt collection lawsuit instituted by NAS and Evans against Mrs. Hernandez was terminated in favor of Mrs. Hernandez following the Springdale District Court's finding that indeed no proper assignments of rights, title or interest had been conveyed from either HEALTHSOUTH or NWAPA to NAS.

62.     The patently insufficient "blanket assignment" of right, title, or interest in the alleged debt from HEALTHSOUTH and/or NWAPA, along with the fact that Defendant NAS and Defendants Evans were notified by opposing counsel prior to trial

that in fact there existed no valid transfer agreement and that said actions were in

violations of the FDCPA, present evidence of an absence of probable cause for the

proceeding and malice on the part of NAS and Evans.

63.     Plaintiff incurred damages resulting from the malicious prosecution of the

debt collection lawsuit in the form of legal expenses and attorneys' fees, of which

defendants are obligated to pay by law.

## IX.  COUNT FIVE-ABUSE OF PROCESS

64.     The above paragraphs are herein realleged, reiterated, reaverred, and pled

herein as if set forth in full.

65.     Upon information and belief, Separate Defendants NAS and Evans have

initiated other consumer credit lawsuits with ulterior purposes for which legal

procedures are not designed, in efforts to intimidate debtors into paying a debt not

lawfully owned by NAS or Evans.

66.     Upon information and belief Defendants NAS and Evans have been

successful in obtaining judgments against unsuspecting debtors and have willfully and

unlawfully used the legal process in a manner not proper in the regular conduct of the

proceeding to obtain money for consumer debts of which they have no right, title, or

interest, such as the issuance of writs of garnishment.

67.     Upon information and belief, class member plaintiffs incurred damages

resulting from the abuse of process of the debt collection lawsuits in the form of actual

damages equaling amounts of wrongfully issued judgments, legal expenses and attorneys' fees, of which defendants are obligated to pay by law along with punitive damages.

## IV.  CLASS ACTION ALLEGATIONS

68.     As this matter is one seeking class action relief, Plaintiff Hernandez incorporates the above facts and the discussion below to establish her typicality to the class and the corresponding FDCPA offenses as committed by Defendants, collectively. The John Doe conspirators are similarly situated to those separate defendants HEALTHSOUTH and NWAPA.

69.     Plaintiff brings this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and on behalf of all Defendant-debtors in Arkansas who were subjected to illegal and unfair collection practices and/or acts by Separate Defendants NAS, Defendants Evans, and the affiliated parties with whom NAS entered into patently invalid debt "blanket assignment" agreements for collection purposes. These commonly situated defendants have suffered damages as a direct result of these actions.

70.     This particular class of plaintiffs, i.e., those who have been victim to this illegal scheme, satisfies the numerosity requirement insofar as that joinder of all members is impracticable at this stage of litigation. On information and belief, Plaintiff estimates that the class comprises not less than seven hundred (700) individual

members, all of which are members of the public that have been the victims of grossly unfair debt collection practices as perpetrated by Defendant NAS, Defendants Evans by and through patently invalid "blanket assignment" agreements with entities such as HEALTHSOUTH and other similarly situated companies, corporations, or individuals. With this large number of plaintiffs, it is economically and physically impracticable for the members to be individually joined in the action at this stage of litigation. Furthermore, joinder is also impracticable considering that the members of the Class are located in multiple counties in Arkansas, based upon a preliminary investigation of court records throughout Benton, Washington, and Madison Counties within Northwest Arkansas,

71.    The number and identity of other class members may be ascertained from information in possession of the Defendants, the identity of class members may be easily determined using Defendant's own records and by examining the assignment "blanket assignment" agreements and employment contracts by and between the Defendants, as well as examining public records of similarly-filed lawsuits. A summary compilation of lawsuits filed by Separate Defendants NAS and Evans in district and circuit courts within Washington, Benton, and Madison Counties indicates potential class members exceeds 700 persons, and such compilation is attached as Exhibit 8 and is incorporated by reference. This is not an exhaustive list and, upon information and

belief, this list will grow substantially upon further investigative efforts and access to records held by Defendants Evans and Defendant NAS.

72.     Questions of both law and fact are common among the class members and portray a substantially identical factual situation; use of false and misleading communications and legal process to procure payment of purported debts that are, in actuality, owned by persons not party to the legal process.   On information and belief, all class members were subjected to unfair debt collection practices under similar circumstances, and any questions of law raised in the proceeding will be common to the class members; namely, each class member has or may have suffered telephone harassment at the hands or direction of Defendant NAS, has been sued by NAS under a sham "blanket assignment" theory when in true fact there is no such transfer of ownership, and many class members have actually paid money to NAS under this illegal scheme. The common questions of fact bearing on all class members requires a determination of whether the Defendants falsely claimed legal right, title, and interest in consumer debts and made misrepresentations to this effect to debtors when attempting to collect on said debts. On information and belief, all claims to rightful title in consumer debts were predicated upon a single "blanket assignment" that wholly lacks adequate legal consideration.   On information and belief, lawsuits were improperly filed resulting in unjust and improper judgment awards to Defendants

through default or otherwise. These questions of fact give rise to common questions of

law that include, but are not limited to:

      a. Whether Defendants' conduct in improperly filing lawsuits, obtaining improper judgments, making harassing and threatening phone calls, and falsely representing the amount of debt and legal entitlement to said debt constitutes a violation of the FDCPA;

      b. Whether Defendants' conduct in falsely representing the amount and legal entitlement of consumer debt and obtaining payments through these misrepresentations constitutes common law fraud;

      c. Whether Defendants acted in concert and/or conspired to violate the FDCPA and whether this conduct constitutes civil conspiracy;

      d. Whether Defendants acts of initiating consumer credit lawsuits with ulterior purposes for which legal procedures are not designed constitutes abuse of process;

      e. Whether Defendants' acted with malice and without probable cause in initiating lawsuits for monies not legally owed arising to conduct constituting malicious prosecution; and,

      f. Whether Defendants' conduct caused injury to the Plaintiff and the Class members, and, if so, the appropriate class-wide measures of damages.

73.    These common questions of law and fact predominate any questions

specific to individual plaintiffs. The common questions are preliminary threshold

questions that must be resolved for all class members.

74.    The claims and defenses of the representative party are typical of the

claims of the class. On information and belief, all class members received debt

collection letters and/or Summonses misrepresenting the status of a debt, were

threatened with illegal lawsuits, and/or were wrongfully sued in a similar manner resulting in improper judgments or settlements. Thus, any claims or defenses raised in the proceeding will be typical to the class members. The Plaintiff's claims arise from the same wrongful conduct of the Defendants that gives rise to the other class members' claims. The claims of the representative Plaintiff and other class members all operate under the same legal theories.

75.     The class representative(s) will fairly and adequately protect the interests of the class. The Plaintiff has no conflict with the interests of other members of the class, and there has been no collusion. Representative counsel is qualified, experienced, and generally able to conduct the litigation. The attorneys of the Henry Law Firm will fairly and competently represent the class. The representative Plaintiff has an interest in the action, is familiar with the wrongful conduct of the Defendants, and is able to assist in decision-making regarding the litigation.

76.     The class action method is superior to other methods for the fair and efficient adjudication of this dispute. The proposed class is a manageable group. The small size of individual claims and the relatively low return for individual violations of the FDCPA ($1,000 per each occurrence) would make individual suits economically unfeasible, and the repeated litigation of the same liability issues would likely lead to inconsistent results. The class action is fair to both the class and the Defendants because it will allow each party to mount a single vigorous case on issues common to all parties.

WHEREFORE, the Plaintiff, and other similarly-situated parties, prays that this

Court:

    a.  Enter judgment in favor of the named Plaintiff and against defendants jointly and severally for actual damages, statutory damages amounting to $500,000, or one percent (1%) of each Defendants' net worth; and attorneys' fees, and costs pursuant to 15 U.S.C. §1692k(a);

    b.  Enter judgment for the Plaintiff and all similarly situated parties for attorneys' fees and costs incurred with the full advancement of this lawsuit and for recovery of all sums paid in connection with all lawsuits unlawfully prosecuted or threatened by the Defendants;

    c.  Enter a judgment for the Plaintiff and all similarly situated parties and against each defendant for actual damages arising out of the civil conspiracy claim and for punitive damages in an amount sufficient to deter and punish;

    d.  Enter a judgment for the Plaintiff and all similarly situated parties against each defendant for actual damages arising out of the state claim for malicious prosecution and for punitive damages in an amount sufficient to deter and punish;

    e.  Enter a judgment for the Plaintiff and all similarly situated parties against each defendant for actual damages arising out of the claim of fraud and deceit and for punitive damages in an amount sufficient to deter and punish;

    f.  Enter a judgment for the Plaintiffs and all similarly situated parties against each defendant for actual damages arising out of the claim of abuse of process and for punitive damages in an amount sufficient to deter and punish; and

    g.  Grant other such relief, as the Court deems just and equitable.

Respectfully Submitted,

HENRY LAW FIRM
Mark Murphey Henry
Michael Sean Brister
Nathan Chaney
P.O. Box 1105
Fayetteville, AR 72702
(479) 695-1330 telephone
(479) 695-1332 facsimile